Good morning, Mr. Donovan. May it please the Court, I'm Jeremiah Donovan. In the five minutes that I have with you this morning, I want to argue two things. First, I want to talk about one particular provision of one particular condition of supervised release, and then I want to try to impress upon you the importance of orally pronouncing all conditions of supervised release generally, not making reference to this particular case, unless you, of course, steer me in some different direction. The provision I want to talk to you about is this provision that he has to take any prescribed medications unless otherwise approved by the mental health provider. Remember, during the course of the I think he could benefit from mental health counseling. Nothing in the record indicates that he needs mental health counseling. He's just a greedy guy who steals. But the defense counsel says that. Hold on a second, Mr. Donovan. The record is replete with evidence that he suffered this trauma as a child that the defense lawyer argued in a written submission affected his whole life and continue to affect him. You are absolutely right about that, Judge, but the record is also replete with he was a businessman who had all kinds of success. Yeah, but when the defense lawyer stands up to the sentencing and says, I believe he can benefit from psychiatric counseling and has to ask for a substantial variance, first of all, why isn't that waivered? Well, I think that's fair enough. That's fair enough. I think you're right about that. But what about the psychotropic medicine? That is, that I think is really troublesome, because what the judge says First of all, nobody raised that. Nobody objected. It's run to plain error, and I don't understand why that's ripe. We don't know, when your client gets out, we don't know whether he's going to be prescribed any medications. We don't know whether he's going to object to those medications. So if when he gets out under his mental health treatment, someone prescribes a medication and your client says, I don't want to take that, presumably they'd go before the district court and the district court would decide that issue, right? Why would we decide that in a vacuum? I mean, you could say that about any – first of all, this whole issue of ripeness is bothersome to me. I mean, to say, well, we don't know what's going to happen. Well, you know, one of the provisions of supervised release is within 96 hours, he has to report to the probation officer. But we don't know that he's ever going to be released from custody. Maybe he'll die in custody. Maybe while he's in custody, a new president will commune his sentence. We don't know that. Well, we don't know that some licensed nurse at a mental health place is going to prescribe some psychotropic medicine that's going to cause him to have a tide of dyskinesia for the rest of his life. We don't know that, but that's what's permitted here and it seems to me it's just – it's not even given to the – the authority's not even given to the probation officer to decide what drugs – when you were district order that a defendant take psychotropic drugs in order to restore him to competency, you had to jump through all kind of hoops in order to do that. Now, here's the second – You just don't think this provision, even though it is a standard part of the mental health treatment provision, you don't think it should ever be in there. You're not objecting to it under the circumstance of this case. You just think it could never be justified in any circumstance. Oh, no, no. I think – well, well – To put it as part of the condition. You just think it should never be in there. No, but that's not true. Let's say you're dealing with a – How do you think it would be okay? Let's say you're dealing with a defendant who clearly is psychotic and who has been taking medications throughout, then it seems to me that a district judge could well say that. Look at the judgment – here's what the judgment says here. I have no idea what this means, may it please the Court. The judgment, the written judgment, and of course this isn't the – this isn't the binding part of it, but it says – it says that you will continue to take any prescribed medications unless otherwise instructed. What does that mean? Continue to take any prescribed – he didn't take – he didn't take any medications at all, never mind psychotropic medications. What does that – he will continue to – I mean, you know, what I'd do is if he didn't take the I'd go in the violation proceeding and say, well, he said he was supposed to continue to take whatever medications he was taking, and he wasn't taking any, so there's no violation. Anyway, I – Can I ask you about the oral pronouncement? And we just had an en banc decision, as you know, a few weeks ago, because you cited it in your supplemental briefing, Mariana, where we said that the oral pronouncement of the standard conditions can be satisfied if the defendant has a copy of the standard conditions and they're expressly incorporated by reference. And here, that's exactly what the district court did. The district court said, I'm imposing standard conditions 1 through 12, and the PSR, which the judge confirmed that your client reviewed with the attorney, has standard conditions 1 through 12. So why isn't that in compliance with Mariana? So let me ask a rhetorical question. When the judge says – I was asking the question. I'm kidding. Go ahead. When the judge says, we'll comply with the standard conditions of supervision 1 through 12, is she talking about what's in the pre-sentence report? Yes. No, she's not. She's talking about what the district judges have decided should be the standard conditions 1 through 12. Now, in this case, in this case, this – 1 through 12, and you don't think she's referring to the PSR? I think she's referring to the plan of the district court that sets forth the standard conditions that should be imposed in any case. Now, this is a quibble, because what's in the pre-sentence report is the same as the plan. Okay. So why does it matter? Let me talk to you. So you're taking away my second point. Okay. Let me tell you why it's so important that the conditions be recited, okay? I don't know. How – what's the total number of sentencings that this panel has done when they were district judges? I mean, it must be huge. You know the sentencings are much more than just, oh, let's get the guidelines right and then pick a number. It's an opportunity for the victims to come in and get off their chest what they think. It's an opportunity for the family to come in. Now, my family has all come in, and they think my guy's been framed. If they only had money to hire Johnny Cochran, we wouldn't be here. They get to hear the prosecutor. They get to hear the judge. And they get to see something different. And it's a really important opportunity for the defendant to hear that he's a bad man or a troubled man or a weak man. He didn't hear that anywhere else in the criminal proceeding, maybe in a bond proceeding. But other than that, the only place he sees it is in the U.S. Attorney's press release. It is so important for a victim to hear that if he has contact with me after he gets out, then he can go back to jail. It is so important for a victim to hear that he's not just getting 5 or 10 or 15 years. When he gets out, he's going to have a whole bunch of impositions upon his liberty that are important. It's so important for the family to hear it. Let me tell you, I can guarantee you that if the defendant returns to his old ways, right, his wife is not going to say, I fear, darling, that you are disobeying Condition 10 of the conditions of supervised release. All right. She'll say, that judge told you not to hang around with those guys. Maybe it's a good idea for a district judge to read those for other reasons that you're pointing to. But you're arguing that Mariana should be overruled even though it was issued a few weeks ago because of Mariana, we said, that it's okay to do exactly what the district court did here. And you're just saying, I don't think that's a good idea. But, right? Anyway. All right. I find it helpful. You're saying that the judge ought to pronounce the conditions in order to benefit the victims here. But there's nothing that prevents a defense lawyer from doing that or the government from doing that privately. I mean, there's no reason why it can't be, you know, the conditions are there. But you know from sentencings that sentencings are a public – they're like weddings. They're like inaugurations. They are public proceedings. So much more goes on in a sentencing than just meets the eye. Judge, let me suggest this. So what happens when the probation officer first – my time's way off – but what happens when he first meets the defendant after he gets out of jail? He goes through the conditions of supervised release. It is so – and he's trying to have a rapport with his new supervisee, right? But the first thing he's got to do is you can't do this, you can't – it is so much easier for the probation officer to say, remember what the judge said? The judge said this. The judge said this. It's not me saying it. It's the judge. Anyway, you've heard my – I thank Your Honors for your patience. My brother and I have probably briefed these issues far more than, you know, the – Can I just say one more thing? Being in front of two district judges and telling them that at every sentence, two from the district judge, a district judge has to go through all of these conditions that they have repeated hundreds of times, it's a pain for the district judge, but it's really important for sentencing. Thank you, Your Honors. All right. Thank you, Mr. Donovan. We'll hear from the government. Mr. Felton. Good morning, Your Honors. May it please the Court. My name is David Felton. I'm an assistant United States attorney in the Southern District of New York. I represent the government on this appeal, and I represented the government in the proceedings below. The judgment of conviction should be affirmed by actively soliciting the mental health treatment condition four times in writing and three times orally at sentencing. That's on page 22 of our brief. Randolph waived any challenge to it on appeal. In any event, there was no error at all, much less plain error, in the imposition of the conditions of supervised release. And the special conditions of supervised release, which were reasonably related to and, indeed, amply supported by the 3553A factors. On the Majorano issue, Your Honors, the Court addressed this, and then Gomez noted that incorporating and specifically referring to the PSR suffices. Unless the panel has any further questions, we rest on our submission. The prescribing of medications, I think you can see it in your brief, that when he's on supervised release, the medicine is prescribed, and he doesn't want to take it. He has every right to go before the district court and object to that under that condition, right? The government agrees with that? Absolutely, Your Honor. Just like in the Roberson case we cited, just like in the Schloss case from two weeks ago, which cited Roberson, which Judge Jacobs, of course, was on that panel, we agree, Your Honor. All right. All right. Thank you both. We appreciate you coming in. We have a reserved decision. Have a good day.